**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

SRC LABS LLC

   and

SAINT REGIS MOHAWK TRIBE

   *Plaintiffs*

vs.

MICROSOFT CORPORATION,

   *Defendant*

Civil Action No. 1:17-cv-01172-LO-JFA

## MICROSOFT CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

LEGAL STANDARD........................................................................................................2

FACTUAL BACKGROUND .............................................................................................4

    A.    The Parties ..........................................................................................4

    B.    Interactions Between Plaintiffs and Microsoft ......................................5

    C.    The Complaint's Infringement Allegations .............................................6

    D.    Individuals Allegedly Relevant to Issues in the Case .............................6

ARGUMENT .....................................................................................................................8

I.    This Action Could Have Been Brought in the Western District of Washington. ...............8

II.    The Interests of Justice and Convenience of the Parties and Witnesses
Weigh Heavily in Favor of Transfer to the Western District of Washington. ....................8

    A.    Plaintiffs' Choice of Forum Is Entitled to No Weight. ..........................8

    B.    The Ease of Access to Sources of Proof and the Convenience
of the Parties and Witnesses Favor Transfer........................................10

    C.    The Interests of Justice and In Having Local Controversies
Decided at Home Favor Transfer to the Western District of Washington............13

CONCLUSION..................................................................................................................15

Page(s)

**Cases**

*Acterna, LLC v. Adtech, Inc.*,
 129 F. Supp. 2d 936 (E.D. Va. 2001) ............................................................3, 9, 10

*Agilent Techs., Inc. v. Micromuse, Inc.*,
 316 F. Supp. 2d 322 (E.D. Va. 2004) ..................................................................12

*BHP Int'l Inv., Inc. v. OnLine Exch., Inc.*,
 105 F. Supp. 2d 493 (E.D. Va. 2000) ....................................................................3

*Byerson v. Equifax Info. Servs., LLC*,
 467 F. Supp. 2d 627 (E.D. Va. 2006) ..................................................................3, 4

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*,
 83 F. Supp. 2d 689 (E.D. Va. 2000) ..................................................................2, 14

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009)............................................................................10

*Goodyear Dunlop Tires Operations, S. A. v. Brown*,
 564 U.S. 915 (2011)................................................................................................8

*Ion Beam Applications S.A. v. Titan Corp.*,
 156 F. Supp. 2d 552 (E.D. Va. 2000) ..................................................................3, 10

*JTH Tax, Inc. v. Lee*,
 482 F. Supp. 2d 731 (E.D. Va. 2007) ..................................................................2, 8

*Koh v. Microtek Int'l, Inc.*,
 250 F. Supp. 2d. 627 (E.D. Va. 2003) ....................................................................2

*Lycos, Inc. v. TiVo, Inc.*,
 499 F. Supp. 2d 685 (E.D. Va. 2007) ..................................................................3, 10

*In re Nintendo of Am., Inc.*,
 756 F.3d 1363 (Fed. Cir. 2014)............................................................................11

*Pragmatus AV, LLC v. Facebook, Inc.*,
 769 F. Supp. 2d 991 (E.D. Va. 2011) ..................................................................3, 10

*Yancey v. Int'l Fidelity Ins. Co.*,
 No. 1:16-cv-0057, 2016 WL 2997375 (E.D. Va. May 25, 2016)........................4, 14

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2013)...........................................................................................14

**Statutes**

28 U.S.C. § 1400(b) ............................................................................................................8

28 U.S.C. § 1404(a) ............................................................................................................2

**INTRODUCTION**

According to the Complaint in this case, Plaintiff Saint Regis Mohawk Tribe ("SRMT") is a sovereign American Indian tribe located in upstate New York and Co-plaintiff SRC Labs, LLC ("SRC") is a Texas limited liability company. The latter apparently is run by an investment manager in Dallas. The asserted patents list Colorado inventors. The Plaintiffs and asserted patents have no connection whatsoever to this District. Similarly, Defendant Microsoft Corporation ("Microsoft") is organized under the laws of Washington state, with its principal place of business in Redmond, in the Western District of Washington, not in this District. Thus, for this case to have any factual links to the Eastern District of Virginia, such that it could be more conveniently maintained here, those links would have to be premised on the facts of the controversy between the parties pleaded in the Complaint.

The Complaint, however, as well as facts beyond reasonable dispute, firmly establish that this controversy does not belong in this District, and should be transferred to the Western District of Washington for the convenience of the parties and witnesses, and in the interests of justice. Plaintiffs allege that Microsoft infringes through its use of certain field programmable gate array (FPGA) technology, particularly through technology developed in the course of Microsoft's Catapult project. Microsoft's Catapult development took place in Redmond, Washington. Plaintiffs identify ten Microsoft employees who "may have knowledge relevant to the issues in this case" and who work on Catapult—all live and work in the Western District of Washington. Plaintiffs allege that they repeatedly contacted Microsoft at its Redmond headquarters concerning the patents; in fact, SRC's principal also traveled to the Seattle area twice to meet with a Microsoft employee. Beyond merely alleging infringement, Plaintiffs contend that Microsoft's employees who worked on Catapult (namely, those living and working in the

Western District of Washington) "blatantly and intentionally" copied the technology of the asserted patents.

Courts in this district have long made clear that the Eastern District "cannot stand as a willing repository for cases which have no real nexus to this district." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000). This case has no meaningful connection to the Eastern District of Virginia. Instead, the Complaint accuses Microsoft of willful patent infringement, based on alleged actions of Microsoft's Washington employees and SRC's own contacts with Microsoft in Washington. This case should be transferred to the Western District of Washington.

**LEGAL STANDARD**

A district court may transfer a civil action to any other district where the action could have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Court conducts two inquiries in determining whether to transfer a civil action: "(1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007).

Under the first inquiry, "[i]n order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d. 627, 630 (E.D. Va. 2003).

Under the second inquiry, the Court may balance factors including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in

2

diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

*BHP Int'l Inv., Inc. v. OnLine Exch., Inc.*, 105 F. Supp. 2d 493, 498 (E.D. Va. 2000). In a patent case, "[t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *See Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (citations omitted).

"[T]he plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007). "The level of deference to a plaintiff's forum choice varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (quotation marks omitted). "[I]f there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Lycos*, 499 F. Supp. 2d at 692. Where the chosen forum is neither the plaintiff's residence nor the place where operative events occurred, the plaintiff's choice of forum "loses its [ ] status in the court's consideration." *Ion Beam Applications S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000).

The interest of justice "encompasses public interest factors aimed at systemic integrity and fairness," including "judicial economy and the avoidance of inconsistent judgments." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quotation marks and citations omitted). Additional public interest factors include "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law."

3

*Id.* Additionally, "[t]he interest in having localized controversies resolved at home" can "weigh[ ] heavily in favor of transfer in [a] case with [little] factual connection to plaintiffs' chosen forum." *Yancey v. Int'l Fidelity Ins. Co.*, No. 1:16-cv-0057, 2016 WL 2997375, at *8 (E.D. Va. May 25, 2016), citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008).

## FACTUAL BACKGROUND

### A.     The Parties

Plaintiff Saint Regis Mohawk Tribe ("SRMT") is "a federally-recognized, sovereign American Indian tribe with reservation lands in northern New York," near Akwesasne, New York.  (Compl. ¶ 22.)  Plaintiffs' complaint does not identify any connection between SRMT and this District.  SRMT's only identified connection to this case is to attempt to avoid the filing of "any *inter partes* review proceedings involving the patents asserted in this case."  (Compl. ¶ 23.)

Plaintiff SRC Labs, LLC ("SRC") is a Texas limited liability company, whose parent appears to be FG SRC, LLC, a Delaware limited liability company.  (Dkt. 2.)  According to public records, SRC's address is 100 Crescent Ct., Dallas, Texas.  Ex. 1.  A Reuters article from September 12, 2017, reports that SRC is "[h]eaded by Dallas lawyer, entrepreneur and investment manager Brandon Freeman."  Ex. 2.

FG SRC, LLC is allegedly the successor to SRC Computer, which was founded in 1996 by Seymour Cray, Jim Guzy, and Jon Huppenthal.  (Compl. ¶¶ 37-38.)  According to the Complaint, SRC Computer developed certain technology related to computer architecture beginning in 1997.  (Compl. ¶¶ 46-47.)  SRC Computer was headquartered in Colorado Springs, Colorado.  (Compl. ¶ 66.)

SRC appears to have assigned the asserted patents (among others) to SRMT on or about August 2, 2017.  Ex. 3; Compl. ¶¶ 94-95.  According to the Complaint, SRMT then entered into an exclusive license agreement with rights to sublicense back to SRC.  (Compl. ¶ 96.)

Defendant Microsoft Corporation ("Microsoft") is a corporation organized under the laws of Washington state, with its principal place of business at 1 Microsoft Way, Redmond, Washington.

### B.    Interactions Between Plaintiffs and Microsoft

The Complaint alleges two instances of Microsoft interactions with SRC.  In the first, the Complaint alleges that SRC Computers sent Microsoft a letter concerning certain patents in June 2010.  (Compl. ¶ 59.)  The letter, reproduced in the Complaint, was sent to Microsoft in Redmond, Washington, from SRC Computers' counsel in Colorado Springs, Colorado.  (*Id.*).  The letter claims that "the activities of Mr. Ken Eguro and the Microsoft Embedded and Reconfigurable Computing Group . . . may possibly involve SRC Computers' patented technology."  (*Id.*)  In the second, the Complaint alleges that its patent portfolio was "offered" to Geoffrey Hoggard in 2015.  (Compl. ¶ 60.)  Mr. Hoggard is a Microsoft licensing executive working in Redmond, Washington.  Hoggard Decl. ¶ 1.

SRC and Microsoft had a third interaction, not mentioned in the Complaint, which took place entirely in the Seattle area in late 2016.  Brandon Freeman secured an introduction to Microsoft engineer Doug Burger through Bill Powers, the president of the University of Texas.  Burger Decl. ¶ 5.  At Mr. Powers' request, Mr. Burger had two meetings in the Seattle area with Brandon Freeman and Todd Rooke, concerning Mr. Rooke's company DirectStream.  *Id.*  Nothing came of the meetings.  *Id.*  Mr. Burger viewed DirectStream as a potential customer or

user of Microsoft's Azure cloud-based computing technology—not as a source of technology or ideas. *Id.*

## C. The Complaint's Infringement Allegations

The Complaint alleges that Microsoft's infringement is connected to "online services that utilize FPGA [field-programmable gate array] Accelerators," identifying in particular Office 365, Bing, Azure, and Microsoft's Deep Convolution Neural Networks. (Compl. ¶¶ 118, 173.) The Complaint alleges that Microsoft's work on a project called Catapult is relevant to the issues in this case. (*See* Comp. ¶¶ 63-87.) Microsoft's work on Catapult has been, and continues to be, conducted in Redmond, Washington. *See* Bittner Decl. ¶4; Burger Decl. ¶ 4; Caulfield Decl. ¶ 4; Chung Decl. ¶ 4; Eguro Decl. ¶ 4; Fowers Decl. ¶ 4; Heil Decl. ¶ 4; Lee Decl. ¶ 4; Lo Decl. ¶ 4; Ovtcharov Decl. ¶ 4; Putnam Decl. ¶ 4. The Complaint also alleges that Microsoft's Andrew Putnam "drew up his initial design" for hardware running FPGAs "in Colorado Springs, where, coincidentally, SRC was headquartered." (Compl. ¶ 13.)

## D. Individuals Allegedly Relevant to Issues in the Case

The Complaint identifies a series of Microsoft employees, contending that they "may have knowledge relevant to the issues in the case." (Compl. ¶ 19.) The following lists the individuals (including titles and work locations) identified in the Complaint, including those in the Complaint's chart (correcting for inaccuracies) and elsewhere in the pleading:

| Name | Title at Microsoft | Work Location |
|------|--------------------|--------------| 
| Ray Bittner | Principal Hardware Engineer | Redmond, WA |
| Doug Burger | Distinguished Engineer | Redmond, WA |
| Adrian Caulfield | Principal Research Hardware Engineer | Redmond, WA |
| Eric Chung | Senior Researcher | Redmond, WA |
| Ken Eguro | Senior Researcher | Redmond, WA |
| Jeremy Fowers | Senior Hardware Engineer | Redmond, WA |
| Stephen Heil | Principal Program Manager | Redmond, WA |

6

| Geoffrey Hoggard | Director, Intellectual Property Licensing & Acquisitions | Redmond, WA |
|---|---|---|
| Peter Lee | CVP Microsoft Research Next | Redmond, WA |
| Daniel Lo | Senior Research Hardware Design Engineer | Redmond, WA |
| Kalin Ovtcharov | Senior Research Hardware Engineer | Redmond, WA |
| Andrew Putnam | Principal Hardware Engineering Manager | Redmond, WA |
| John Demme | FPGA Tools Engineer | Mountain View, CA |
| Andrew Lenharth | FPGA Tools Engineer | Austin, TX (home office) |
| Art Akerman | Architect Manager | Henrico, VA (home office) |
| PJ Grinsell | Cloud Solutions Architect | Glen Allen, VA |
| Bruce Lowekamp | Principal Software Engineering Manager | Williamsburg, VA (home office) |
| Richard Tilghman | Regional Build Program Manager | Boydton, VA |
| Daniel Kaminsky | *No longer at Microsoft* | *N/A* |

Bittner Decl. ¶¶ 1-2, 4; Burger Decl. ¶ 1; Caulfield Decl. ¶¶ 1-2, 4; Chung Decl. ¶¶ 1-2, 4; Eguro Decl. ¶¶ 1-2, 4; Fowers Decl. ¶¶ 1-2, 4; Heil Decl. ¶¶ 1-2, 4; Hoggard Decl. ¶ 1; Lee Decl. ¶¶ 1-2, 4; Lo Decl. ¶¶ 1-2, 4; Ovtcharov Decl. ¶¶ 1-2, 4; Putnam Decl. ¶¶ 1-2, 4; Demme Decl. ¶ 1-2; Lenharth Decl. ¶ 1-2; Akerman Decl. ¶ 1; Grinsell Decl. ¶ 1; Lowekamp Decl. ¶ 1; Tilghman Decl. ¶ 1.

Third party witnesses are likely also relevant to this case on issues of invalidity and non-infringement. FPGA technology underwent significant development in the 1980s and 1990s by Altera Corporation and Xilinx Corporation. Altera was, and Xilinx still is, headquartered in San Jose, California. Third-party witnesses knowledgeable about relevant prior art are thus likely located on the West Coast of the United States. Altera was acquired in 2015 by Intel Corporation, headquartered in Santa Clara, California. (*See* Comp. ¶ 92.) The Complaint alleges that Microsoft purchases its FPGAs from Altera (now Intel). (*See* Compl. ¶¶ 91-92.) In addition to alleging direct infringement by Microsoft, the Complaint alleges that Microsoft induces

infringement by Apple Inc.'s Siri and Yahoo! Inc.'s Search products. (*E.g.*, Compl. ¶ 151.) Apple is headquartered in Cupertino, California; Yahoo! is headquartered in Sunnyvale, California.

The inventors of the asserted patents are Jon M. Huppenthal, Paul A. Leskar, David E. Caliga, Thomas R. Seeman, and Lee A Burton. (Dkt. 1 Exs. A-F at 1.) The faces of the patents list all inventors as residents of Colorado. *Id*. Publicly-available information suggests that Mr. Huppenthal, Mr. Caliga, and Mr. Seeman currently reside in Colorado Springs, Colorado. Exs. 4-6.

## ARGUMENT

## I.     This Action Could Have Been Brought in the Western District of Washington.

The Western District of Washington has personal jurisdiction over Microsoft, and venue is proper in that district, because Microsoft is a corporation organized under the laws of Washington, with a principal place of business in Redmond, Washington, within the Western District. *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 924 (2011); 28 U.S.C. § 1400(b). Accordingly, this action could have been brought in the Western District of Washington. *JTH Tax*, 482 F. Supp. 2d at 735.

## II.    The Interests of Justice and Convenience of the Parties and Witnesses Weigh Heavily in Favor of Transfer to the Western District of Washington.

### A.     Plaintiffs' Choice of Forum Is Entitled to No Weight.

The Eastern District of Virginia is neither SRC's nor SRMT's home forum. SRC's home forum appears to be the Northern District of Texas; SRMT's home forum is the Northern District of New York. The Complaint identifies communications SRC sent from Colorado to Microsoft in Washington (Compl. ¶ 59), product development undertaken by Microsoft in Washington (*id.* ¶¶ 63-69), and connections between Microsoft and chip manufacturers located in California (*id.*

8

¶¶ 90-93).  The alleged invention of the patents-in-suit appears to have taken place in Colorado, by residents of Colorado.  (Dkt. 1 Exs. A-F at 1.)

In support of its allegation that venue is proper in this District, the Complaint notes that Microsoft operates data centers in Virginia, and contends that some of the hardware in those locations, and services those locations provide, are "accused of infringement."  (Compl. ¶¶ 13-19.)  However, as indicated by the diagram included in the Complaint, Microsoft operates such data centers across the country, including in Illinois, Iowa, Colorado, Texas, California, and Washington.  (Compl. ¶ 13-14.)  The Complaint's infringement allegations generally accuse services that Microsoft makes available anywhere in the United States.  (*E.g.*, Compl. ¶ 118.)  Nothing in the Complaint's infringement allegations suggest that the data centers in Virginia or the services they provide are unique, such that venue would be more convenient or appropriate here rather than in one of the other six identified states.[1]  *See Acterna*, 129 F. Supp. 2d at 938 ("Federal courts are not solicitous of plaintiff's claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more.").

Because this District is home to neither Plaintiff, and otherwise has no meaningful connection to infringement allegations in the Complaint, the Plaintiffs' choice of this forum is

---

[1] To be sure, paragraph 18 of the Complaint states, "Microsoft's data centers that contain the hardware and provide the services accused of infringement *are all located* in the Eastern District of Virginia."  (Compl. ¶ 19, emphasis added.)  Microsoft does not interpret this statement as a disclaimer by Plaintiffs of all accusations of infringement by services provided by hardware located outside of this District, given that the Complaint's later allegations appear to accuse Microsoft services and hardware regardless of their location.  (*E.g.*, Compl. ¶ 118.)  If Plaintiffs actually seek to limit their infringement claims in this case *only* to hardware located in this District (and services provided by that hardware), they should immediately amend their complaint to make that clear.

entitled no weight.  *See Lycos*, 499 F. Supp. 2d at 692; *Pragmatus*, 769 F. Supp. 2d at 995; *Ion Beam*, 156 F. Supp. 2d at 563.

**B.  The Ease of Access to Sources of Proof and the Convenience of the Parties and Witnesses Favor Transfer.**

Microsoft resides in the Western District of Washington, and the product development identified in the Complaint (the Catapult project) took place in Redmond, Washington, in that district.  *See supra* at 5-7.  Those facts alone strongly weigh in favor of transfer.  *See Acterna*, 129 F. Supp. 2d at 939 ("[T]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.") (citations omitted).

Further, most (if not all) materials relevant to Microsoft's accused products and services are located in the Western District of Washington, weighing heavily in favor of transfer.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("[T]he place where the defendant's documents are kept weighs in favor of transfer to that location.").  The presence of some Microsoft data centers in Virginia does not suggest otherwise, because the Complaint generally alleges infringement by Microsoft's services and hardware, regardless of location, and similar data centers are located throughout the country, including in the Western District of Washington. (Compl. ¶¶ 13-14.)

Witness convenience, "probably the single most important factor in transfer analysis," *Genentech*, 566 F.3d at 1343, weighs heavily in favor of transfer.  First, the convenience of party witnesses decidedly favors the Western District of Washington.  The Complaint's allegations center on FPGA technology generally and Microsoft's Catapult project in particular.  All likely Microsoft witnesses (including those identified in the Complaint) who work on Catapult live and work in the Western District of Washington.  Bittner Decl. ¶¶ 1-2, 4; Burger Decl. ¶¶ 1-2, 4; Caulfield Decl. ¶¶ 1-2, 4; Chung Decl. ¶¶ 1-2, 4; Eguro Decl. ¶¶ 1-2, 4; Fowers Decl. ¶¶ 1-2, 4;

Heil Decl. ¶¶ 1-2, 4; Lee Decl. ¶¶ 1-2, 4; Lo Decl. ¶¶ 1-2, 4; Ovtcharov Decl. ¶¶ 1-2, 4; Putnam Decl. ¶¶ 1-2, 4. Microsoft's headquarters are in Redmond, Washington, in the Western District, and other potential Microsoft witnesses on issues in this case beyond Catapult are likely located there.

For witnesses in the Seattle area, travel to this District is time consuming and difficult. Nonstop flights between Seattle and the D.C. area airports have a flight time of 5-6 hours. Ex. 7. Due to the time difference between the East and West Coasts, the earliest flights leaving Seattle arrive in the D.C. area in the late afternoon. Ex. 7. Any witness travelling between Seattle and D.C. will need to take an entire day to travel, even with a nonstop flight. Exs. 7-8. That these witnesses would need to travel a substantial distance to Virginia, away from their regular employment and for overnight stays, weighs in favor of transfer. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014).

The locations of any party witnesses affiliated with SRC or SRMT with information relevant to this case is unclear, but there is no indication that any such person is located in this District. SRC is a Texas LLC, apparently managed by a Delaware LLC. SRC's principal Brandon Freeman appears to reside in Dallas. Ex. 1. The Complaint itself does not identify any individual person affiliated with SRC in any way, or whether such a person may reside in Texas, Delaware, or anywhere else. SRMT's website lists an Akwesasne, New York address as its contact location. *See* https://www.srmt-nsn.gov/about-the-tribe (visited Nov. 18, 2017). But the Complaint does not identify any individual person or representative of SRMT, or provide any indication as to where such a person may reside. Regardless, this is a patent infringement case brought by two apparent non-practicing entities. It is likely that the overwhelming majority of potential trial witnesses will be Microsoft employees, not party witnesses of SRC or SRMT.

Further, to the extent that any party witnesses of SRC or SRMT would need to travel to the Western District of Washington (from wherever they are located), that consideration is entitled to little weight because Plaintiffs have no connection to this District. *See Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 328 (E.D. Va. 2004) ("[B]y filing its Complaint in the Eastern District of Virginia, a place where Plaintiff does not have one relevant witness, Plaintiff has already burdened its witnesses with the hardships of traveling outside of one's home forum.").

Additionally, many likely third-party witnesses are located in Northern California and in Colorado, each much closer to the Western District of Washington than to this District. As explained above, based on the Complaint's allegations, witnesses from Xilinx, Altera/Intel, Apple, and Yahoo! are likely relevant to issues of invalidity and/or infringement. Those corporations are all located, like Microsoft, on the West Coast. Finally, inventors Mr. Huppenthal, Mr. Caliga, and Mr. Seeman appear to reside in Colorado Springs, Colorado.

Nonstop flights from Northern California airports (San Francisco, San Jose) to Seattle occur throughout the day, with flight times of just over 2 hours. Ex. 9. In contrast, nonstop flights from Northern California airports to the D.C. area have flight times of approximately 6 hours, and (like flights from Seattle to the D.C. area) effectively take an entire day. Ex. 10. There are no direct flights from Colorado Springs, Colorado, to any of the D.C. area airports or to Seattle. Ex. 11. Instead, flights require connections and a total travel time of at least approximately 6 hours to D.C. airports, or just under 5 hours to Seattle. Ex. 12. Nonstop flights from Denver, Colorado (85 miles from Colorado Springs) are available, with a flight time of approximately 4 hours to D.C., and under 3 hours to Seattle. Ex. 13. On balance, travel times

for likely third party witnesses weigh in favor of transfer, especially given the close proximity of the Northern District of California.

As to witness location, the availability of compulsory process favors the Western District of Washington or is neutral, as many potential witnesses are located in the Western District (although most are Microsoft employees), and no identified likely witnesses are located in this District.

The four Microsoft employees identified in the Complaint who work in Virginia do not change this analysis. None of these employees worked on Catapult, the Microsoft technology at the center of the Complaint's allegations. Akerman Decl. ¶ 4; Grinsell Decl. ¶ 4; Lowekamp Decl. ¶ 4; Tilghman Decl. ¶ 4. Plaintiffs seem to have done nothing more than searched publicly-available information for Microsoft employees working in Virginia.

**C.      The Interests of Justice and In Having Local Controversies Decided at Home Favor Transfer to the Western District of Washington.**

According to the Complaint, the central controversy in this case appears to be whether technology developed through Microsoft's Catapult project infringes SRC's patents. (Comp. ¶¶ 63-87.) SRC further alleges that Microsoft "blatantly and intentionally copied" SRC's technology and implemented it in Catapult. (Compl. ¶¶ 59-63, 127.) Microsoft's work on Catapult took place in the Western District of Washington. SRC has repeatedly engaged with Microsoft in the Western District of Washington, through its alleged notice letter sent to Microsoft's Redmond headquarters, through subsequent communications in 2015 (Compl. ¶ 59-60), and through two in-person meetings in 2016, Burger Decl. ¶ 5. The Microsoft employees who worked on Catapult (and who are thus indirectly accused by the Complaint of "blatantly and intentionally" copying SRC's technology) are residents of the Western District of Washington. Bittner Decl. ¶ 2; Burger Decl. ¶ 2; Caulfield Decl. ¶ 2; Chung Decl. ¶ 2; Eguro Decl. ¶ 2;

Fowers Decl. ¶ 2; Heil Decl. ¶ 2; Lee Decl. ¶2; Lo Decl. ¶ 2; Ovtcharov Decl. ¶ 2; Putnam Decl.

¶ 2.[2]

"The interest in having localized controversies resolved at home" thus "weighs heavily in

favor of transfer." *Yancey*, 2016 WL 2997375, at *8. This District has no identifiable interest in

this case. Instead, this case concerns allegations that Microsoft employees residing in the Seattle

area and working at Microsoft's headquarters in Redmond—all in the Western District of

Washington—developed technology that infringes the asserted patents. Citizens of this District

have no particular interest in whether residents of Washington state developed technology that

infringes patents invented by Colorado residents, where those patents are now controlled by a

Dallas investment manager and an American Indian tribe located in New York. This District

should not serve as a "repository for cases which have no real nexus to this district."

*Cogitronics*, 83 F. Supp. 2d at 699.

Other public interest factors are neutral or weigh in favor of transfer. In a patent case,

knowledge of applicable law is similar throughout the Federal District courts, and conflicts of

law issues are unlikely to arise. SRC and SRMT have not previously litigated the asserted

patents here or in any other district. While SRC and SRMT sued Amazon.com, Inc. and related

entities ("Amazon") in this District on the same day it sued Microsoft, Amazon itself is

headquartered in Washington. Moreover, the simultaneous filing of an additional lawsuit in this

District should not become an anchor, under the guise of judicial economy, keeping this case in a

forum in which it does not otherwise belong. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378,

---

[2] Two Microsoft employees identified in the Complaint work on Catapult-related work from
their homes in California and Texas, respectively, but also on recurring business trips to
Redmond. Demme Decl. ¶¶ 2, 4; Lenharth Decl. ¶¶ 2, 4.

1382 (Fed. Cir. 2013) (granting writ of mandamus where "[t]he district court assigned substantial weight in its analysis to the fact that [plaintiff] had also filed suit against another defendant in the same forum" and observing that "we cannot say this negates the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor."). For the 12-month time period ending March 31, 2017, this District had 2,694 pending cases, an increase of 23.4% over the previous year. Ex. 14. In contrast, for the same period, the Western District of Washington had fewer pending cases (2,162) with an increase of only 6.9% over the previous year. Ex. 14. For cases terminating during that period, the Western District's median time to trial (18.7 months) was slightly longer than this District's (13 months). Ex. 15. On balance, there is little meaningful difference between these forums in terms of potential court congestion—if anything, the significant increase of cases recently filed in this District weighs in favor of transfer to the Western District of Washington.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the Western District of Washington.

Dated:  December 1, 2017.

Respectfully submitted,

/s/ Scott M. Border

Scott M. Border (VSB# 74697)
sborder@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711

Of Counsel:
Richard A. Cederoth
rcederoth@sidley.com
Nathaniel C. Love
nlove@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

**ATTORNEYS FOR DEFENDANT
MICROSOFT CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 1st day of December, 2017, I electronically filed the foregoing

document with the Clerk of Court using this Court's CM/ECF system, which will send

notification of such filing (NEF) to the following counsel of record:

L. Lee Byrd
lbyrd@sandsanderson.com
SANDS ANDERSON PC
111 East Main Street
Richmond, Virginia 23218-1998

Madelaine A. Kramer
mkramer@sandsanderson.com
SANDS ANDERSON PC
1497 Chain Bridge Road, Suite 202
Mclean, Virginia 22101

Alfonso Chan
achan@shorechan.com
Andrew Howard
ahoward@shorechan.com
Christopher Evans
cevans@shorechan.com
Michael Shore
mshore@shorechan.com
SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, Texas 75202

*Attorneys for Plaintiffs*

/s/ *Scott M. Border*
Scott M. Border (VSB# 74697)
sborder@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711