**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

SRC LABS, LLC

    and

SAINT REGIS MOHAWK TRIBE          Civil Action No. 1:17-cv-01172-LO-JFA

    *Plaintiffs*

    vs.

MICROSOFT CORPORATION,

    *Defendant*

---

## MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      Plaintiffs' Choice of Forum Is Entitled to Minimal or No Weight....................................2

        A.      *TC Heartland* Does Not Support Forum-Shopping. ................................................2

        B.      Plaintiffs Provide No Substantive Justification for their
                Selection of this Forum........................................................................................4

        C.      SRMT's Status as a Federally-Recognized Indian Tribe
                Is Irrelevant to Transfer. .....................................................................................7

II.     The Convenience of the Parties and Witnesses Favor Transfer. .......................................9

        A.      Inconvenience to a Single, Unidentified SRMT Witness
                Does Not Support Maintaining this Case in this District........................................9

        B.      Witness Convenience Overwhelmingly Supports Transfer...................................10

III.    Judicial Economy and the Interests of Justice Support Transfer. ....................................14

        A.      Judicial Economy Supports Transfer Especially Where Amazon.com
                Has Consented to Transfer to the Western District of Washington.......................14

        B.      The Interests of Justice Support Transferring this Dispute...................................16

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acterna, LLC v. Adtech, Inc.*,
129 F. Supp. 2d 936 (E.D. Va. 2001) ..............................................................11, 13

*Agilent Techs., Inc. v. Micromuse, Inc.*,
316 F. Supp. 2d 322 (E.D. Va. 2004) ..............................................................11, 13

*Barela v. Experian Info. Sols., Inc.*,
No. 04 C 5144, 2005 WL 770629 (N.D. Ill. Apr. 4, 2005)......................................14

*Bd. of Trs. v. Baylor Heating & Air Conditioning*,
702 F. Supp. 1253 (E.D. Va. 1988) ........................................................................13

*BHP Int'l Inv., Inc. v. OnLine Exch., Inc.*,
105 F. Supp. 2d 493 (E.D. Va. 2000) .....................................................................11

*Clark v. Barnard*,
108 U.S. 436 (1883).................................................................................................7

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*,
83 F. Supp. 2d 689 (E.D. Va. 2000) ..................................................................11, 13

*Cypress Semiconductor Corp. v. Integrated Circuit Sys, Inc.*,
No. 01-199-SLR, 2001 WL 1617186 (D. Del. 2001) ..............................................14

*Ericsson Inc. v. Regents of the Univ. of Minnesota*,
IPR Nos. 2017-1186, -1197, -1200, -1213, -1214, -1219
(PTAB Dec. 19, 2017) .............................................................................................10

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)...........................................................................3, 12

*Graphics Props. Holdings, Inc. v. Asus Comput. Int'l, Inc.*,
964 F. Supp. 2d 320 (D. Del. 2013).........................................................................14

*Heinz Kettler GMBH & Co v. Razor USA, LLC*,
750 F. Supp. 2d 660 (E.D. Va. 2010) ......................................................................11

*Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*,
535 U.S. 613 (2002).................................................................................................7

*Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries*,
No. CV 04-60-RE, 2004 WL 1179333 (D. Or. May 27, 2004) ................................8

*OMI Int'l Corp. v. MacDermid, Inc.,*
  648 F. Supp. 1012 (M.D.N.C. 1986) ...................................................................2

*Plexxikon Inc. v. Novartis Pharms. Corp.,*
  No. 17-cv-4405-HSG, 2017 WL 6389674 (N.D. Cal. Dec. 7, 2017) .......................3

*Pragmatus AV, LLC v. Facebook, Inc.,*
  769 F. Supp. 2d 991 (E.D. Va. 2011) ............................................................11, 13

*Pueblo v. Nat'l Indian Gaming Comm'n,*
  731 F. Supp. 2d 36 (D.D.C. 2010) .......................................................................8

*In re Regents of Univ. of Cal.,*
  964 F.2d 1128 (Fed. Cir. 1992)............................................................................7

*SC Johnson & Son, Inc. v. Gillette Co.,*
  571 F. Supp. 1185 (N.D. Ill. 1983) ......................................................................3

*Shawnee Tribe v. United States,*
  298 F. Supp. 2d 21 (D.D.C. 2002) .......................................................................8

*St. Regis Mohawk Tribe v. New York,*
  774 F. Supp. 185 (SDNY 1991)...........................................................................8

*Symbology Innovation, LLC v. Lego Sys., Inc.*
  No. 2:17-cv-86, 2017 WL 4324841 (E.D. Va. Sept. 28, 2017) ...............................4

*TC Heartland LLC v. Kraft Food Grp. Brands LLC,*
  137 S. Ct. 1514 (2017)........................................................................................2

*United States v. U.S. Fid. & Guar. Co.,*
  309 U.S. 506 (1940)........................................................................................8, 9

*VE Holding Corp. v. Johnson Gas Appliance Co.,*
  917 F.2d 1574 (1990)..........................................................................................2

*In re Vistaprint Ltd.,*
  628 F.3d 1342 (Fed. Cir. 2010)...........................................................................15

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) (en banc) .........................................................12, 13

*Xodus Med. Inc. v. G&T Indus., Inc.,*
  No. 16-5850, 2017 WL 3167806 (E.D. Pa. July 24, 2017) .....................................3

*Yancey v. Int'l Fid. Ins. Co.,*
  No. 1:16-cv-0057, 2016 WL 2997375 (E.D. Va. May 25, 2016).......................13, 17

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)..........................................................................................15

**Statutes**

28 U.S.C. § 1391(c) ...........................................................................................................2

28 U.S.C. § 1400(b) .......................................................................................................2, 3

28 U.S.C. § 1404(a) .................................................................................................. *passim*

28 U.S.C. § 1406...............................................................................................................2

28 U.S.C. § 1407..........................................................................................................8, 16

## INTRODUCTION

Plaintiffs Saint Regis Mohawk Tribe ("SRMT") and SRC Labs, LLC ("SRC") concede they have no connection to this District.  And Plaintiffs fail to challenge the central premise of Microsoft's motion: based on the allegations in the Complaint and evidence Microsoft submitted in support of the motion, the Western District of Washington has a much stronger connection to this case than does this District.  Plaintiffs do not dispute that Microsoft's past and ongoing development of Catapult—the technology that Plaintiffs make, by name, the center of the Complaint—takes place in the Western District of Washington.  Plaintiffs also do not dispute that they contacted Microsoft multiple times, including in-person visits, in the Western District of Washington.  Those undisputed facts firmly establish that the Western District of Washington is clearly the more convenient forum.

In their opposition, Plaintiffs fail to muster any substantive reason why it would be more convenient to maintain this case in this District.  Instead, Plaintiffs argue that the Supreme Court's *TC Heartland* decision on a separate subject somehow abrogates all precedent applying § 1404(a) and endorses forum-shopping; suggest (contrary to any authority) that SRMT's participation as a plaintiff makes this case immune from transfer; and attempt to derail this District's otherwise straightforward application of 28 U.S.C. § 1404(a).

The central issue presented in Plaintiffs' Complaint is whether residents of Washington state developed technology that infringes patents applied for by Colorado residents and controlled by a Dallas investment manager and an American Indian tribe located in New York. This case does not belong in this District and should be transferred to the Western District of Washington.

## ARGUMENT

### I.  Plaintiffs' Choice of Forum Is Entitled to Minimal or No Weight.

#### A.  *TC Heartland* Does Not Support Forum-Shopping.

In 1990, the Federal Circuit held that a 1988 amendment to the general venue statute, 28 U.S.C. § 1391(c), meant that patent infringement suits could be filed wherever a defendant was subject to personal jurisdiction.  *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (1990).  The Supreme Court's decision in *TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514, 1519-20 (2017) swept away that holding and adopted a plain meaning of the patent venue statute in 28 U.S.C. § 1400(b).  Microsoft did not cite *TC Heartland* in its motion, because Microsoft did not argue that venue is improper under 28 U.S.C. § 1406.  Rather, Microsoft moved to transfer pursuant to 28 U.S.C. § 1404(a).  *TC Heartland* does not mention § 1404.

Plaintiffs' argument that *TC Heartland* elevates a plaintiff's choice of venue to "paramount importance" in a § 1404(a) analysis is contrary to law and common sense.  First, *TC Heartland* says nothing about § 1404—it concerns where venue is proper at all, not whether one proper venue should be preferred over another in a convenience transfer analysis.

Second, if Plaintiffs were correct, one would expect this "paramount importance" principle to appear in transfer decisions prior to *VE Holding*.  Indeed, Plaintiffs speculate that the reduced weight given to a plaintiff's choice of venue was a judicial "reaction to the former and less stringent venue standards."  (Dkt. 25 ("Opp.") at 5.)  Plaintiffs are incorrect.  Cases that pre-date *VE Holdings* standard *also* give reduced weight to a plaintiff's choice of venue in circumstances like these.  *See, e.g., OMI Int'l Corp. v. MacDermid, Inc.*, 648 F. Supp. 1012, 1016-17 (M.D.N.C. 1986) ("Although the Plaintiff's choice of forum is to be considered, the court is given broader discretion in weighing the relevant factors"); *SC Johnson & Son, Inc. v.*

*Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983) ("While plaintiff's choice of forum is important, it is of reduced value where, as here, the chosen forum lacks significant contact with the underlying cause of action.").

Third, on Plaintiffs' theory, transfer decisions under § 1404(a) post-dating *TC Heartland* should give a plaintiff's choice of forum heightened deference. They do not. *See, e.g.*, *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-cv-4405-HSG, 2017 WL 6389674, at *3 (N.D. Cal. Dec. 7, 2017) ("[T]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint.") (quoting *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001)); *Xodus Med. Inc. v. G&T Indus., Inc.*, No. 16-5850, 2017 WL 3167806, at *6 (E.D. Pa. July 24, 2017) ("Plaintiffs' choice of forum (factor 1) is entitled to little weight in this case because it is not Plaintiffs' home forum."). Plaintiffs cite no decision of any court supporting their position that after *TC Heartland*, their choice of forum is now entitled to heightened deference.[1]

Both before and after *TC Heartland*, Plaintiffs could have chosen to file this suit in this District, in the Western District of Washington, or in another district where Microsoft "has a regular and established place of business" and Plaintiffs allege that Microsoft "has committed acts of infringement." 28 U.S.C. § 1400(b). And both before and after *TC Heartland*, the question presented under § 1404 motion to transfer is the same—whether the convenience of parties and the interests of justice justify transfer from this District to the Western District of

---

[1] Plaintiffs repeatedly cite *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009), but *Genentech* does not address the level of deference due to a plaintiff's choice of forum, much less does it support Plaintiffs' position that courts began to give less deference to that choice "[i]n reaction to … less stringent venue standards." (*See* Opp. 5.)

Washington.  Under pre-1990, post-1990, and post-*TC Heartland* law, if one of those districts were the home of either SRC or SRMT, Plaintiffs' choice of that forum would be entitled to more deference.  Although Plaintiffs suggest that in some circumstances, *TC Heartland* may "prevent[ ] a plaintiff from filing in its home forum," (Opp. 6), Plaintiffs stop short of arguing that those circumstances are present here.  Indeed, Plaintiffs never say which fora SRC and SRMT call home.

As this District has recognized, *TC Heartland* may curtail the "sort of forum shopping in patent litigation that has proliferated over the past thirty years."  *Symbology Innovation, LLC v. Lego Sys., Inc.* No. 2:17-cv-86, 2017 WL 4324841, *1 (E.D. Va. Sept. 28, 2017).  But Plaintiffs' theory is that *TC Heartland* should instead usher in a renewed era of forum shopping:  One where defendants with nationwide places of business, accused of infringement through offering products nationwide, would have no hope of transferring a case under § 1404(a) from the venue selected by the plaintiff—regardless of the balance of convenience of parties and witnesses and the interests of justice.  Plaintiffs cite no authority supporting this contradictory interpretation of *TC Heartland*, and the Court should reject it.

### B.      Plaintiffs Provide No Substantive Justification for their Selection of this Forum.

Plaintiffs do not dispute that Microsoft operates data centers across the country, including in Illinois, Iowa, Colorado, Texas, California, and Washington.  (*See* Dkt. 22 ("Br.") 9.)  Further, Plaintiffs do not dispute that the Complaint's infringement allegations generally accuse services that Microsoft makes available anywhere in the United States.  (*See id*.)  Nothing in the Complaint's infringement allegations suggest that the data centers in Virginia or the services provided there are unique, such that venue would be more convenient or appropriate here rather than in one of the other six identified states.

Plaintiffs identify four facts allegedly making this District an appropriate forum, but fall far short of providing any explanation of why they chose this forum, or why that choice should be entitled to deference.  First, Plaintiffs contend that an "initial pilot program" in 2012 took place in a Virginia data center, calling this "Microsoft's *first infringing act*."  (Opp. 7 (emphasis in original).)  But the Complaint never alleges that these 2012 events constituted infringement— instead, it alleges that "Project Catapult went live in early 2015," *i.e.,* years later, and alleges that Microsoft infringes through "online services that utilize FPGA Accelerators."  (Compl. ¶¶ 74-78, 118.)  The 2012 test was internal.  In any event, even if the 2012 test allegedly infringed under Plaintiffs' (yet-unknown) infringement theory, there is no principle that a location of a "first infringing act" provides a more appropriate venue.  That is especially true here, where Plaintiffs do not dispute that under their theory, alleged infringement now occurs throughout the United States.  Moreover, the Microsoft witness that Plaintiffs link to this test (*see* Opp. 7 n.8) has performed all of his work on Catapult from the Western District of Washington, not Virginia. *See* Burger Decl. ¶ 4.[2]

Second, Plaintiffs argue that "[s]ince 2015, every new server in every Microsoft data center has been equipped with infringing FPGA Accelerators."  (Opp. 7-8.)  Even if that were true, that provides no specific justification for selecting this District as opposed to the location of any other Microsoft data center.

Third, Plaintiffs similarly allege that the "design of the hardware located in Microsoft's data centers" and the "layouts and infrastructure of those datacenters" are relevant to issues in the case.  (Opp. 8.)  Again, that provides no specific justification for selecting this District over

---

[2] The declaration cited here and those cited throughout this Reply were filed with Microsoft Corporation's Memorandum in Support of its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 (Dkt. 22).

other venues with Microsoft data centers.  Plaintiffs do not explain why the location of the data center matters at all where it is the "design of the hardware" that is allegedly relevant.  As Microsoft explained (and Plaintiffs do not dispute), Microsoft's work on Catapult takes place in the Western District of Washington, not in this District.  (Br. 10-11, 13.)  Further, although Plaintiffs declare their intention to "inspect the premises of each datacenter in Virginia under Federal Rule of Civil Procedure 34" (Opp. 8), they do not explain why they apparently only intend to inspect Virginia data centers, as opposed to the others throughout the country.  Even if inspection of any Microsoft data centers were appropriate, such inspection would take place during the discovery period in this case (not at trial), and be conducted by Plaintiffs' outside counsel, who are principally located in Dallas, Texas, not in Virginia.  The physical location of the data centers does not support Plaintiffs' selection of this District.

Fourth, Plaintiffs note Microsoft's employment of people in the Eastern District of Virginia.  (*Id*.)  But as Microsoft explained, the list of individuals *Plaintiffs themselves* believe to have knowledge relevant to this case largely reside in the Western District of Washington, and those few individuals living in Virginia do not work on Catapult.  (Br. 10-11, 13.)  In a footnote, Plaintiffs accuse Microsoft of "misdirection" in its descriptions of the work done by the identified employees based in Virginia, suggesting that Catapult "was Microsoft's research effort" but that the ongoing alleged infringement may involve other people.  (Opp. 3 n.3.)  Plaintiffs misread both Microsoft's brief and the accompanying declarations.  As the declarations make clear, the employees Plaintiffs identified residing in the Western District of Washington *currently* work on "Catapult."  *See* Bittner Decl. ¶ 4; Burger Decl. ¶ 4; Caulfield Decl. ¶ 4; Chung Decl. ¶ 4; Eguro Decl. ¶ 4; Fowers Decl. ¶ 4; Heil Decl. ¶ 4; Lee Decl. ¶ 4; Ovtcharov Decl. ¶ 4; Putnam Decl. ¶ 4.  The Complaint referred to "Catapult" *not only* as the research

project leading to the accused technology, *see* Compl. ¶ 69 ("This was the beginning of Project

Catapult") *but also* as the accused technology itself, *see id.* at ¶ 86 ("all three of Microsoft major

online services … run on ***Catapult's*** infringing FPGA accelerator boards") (emphasis added).

Microsoft's brief and declarations clearly stated that the Virginia-based employees Plaintiffs

identified have not worked on Catapult *at any time*.  *See* Akerman Decl. ¶ 4; Grinsell Decl. ¶ 4;

Lowekamp Decl. ¶ 4; Tilghman Decl. ¶ 4.

### C.    SRMT's Status as a Federally-Recognized Indian Tribe Is Irrelevant to Transfer.

Plaintiffs' argument that their choice to sue Microsoft in this District is entitled to

"further weight" because SRMT "is a federally recognized American Indian tribe" (Opp. 8-9) is

contrary to law.  First, Plaintiffs appeal by analogy to state sovereign immunity, citing the

Supreme Court's decision in *Pennhurst State Sch. & Hosp. v. Halderman*.  (Opp. 9.)  *Pennhurst*

has nothing to do with venue among the federal courts.  The passage Plaintiffs cite concerns the

principle that "a State's waiver of sovereign immunity in its own courts is not a waiver of

Eleventh Amendment immunity in the federal courts."  465 U.S. 89, 99 n.9 (1984).  But where a

State files suit in federal court, it waives its Eleventh Amendment immunity.  *See Lapides v. Bd.

of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619-20 (2002); *Clark v. Barnard*, 108 U.S.

436, 447 (1883) (State's "voluntary appearance" in federal court avoids Eleventh Amendment

inquiry).  Accordingly, if a state elects to sue in federal court, sovereign immunity is waived and

cannot impede transfer under § 1404.  *Cf. In re Regents of Univ. of Cal.*, 964 F.2d 1128, 1134-35

(Fed. Cir. 1992) (rejecting state's argument that sovereign immunity barred coordination of

pretrial proceedings under § 1407).

Unsurprisingly, suits filed by federally-recognized tribes have been frequently transferred

under § 1404(a), with no mention of any sovereign immunity bar.  *E.g.*, *Pueblo v. Nat'l Indian*

7

*Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010) (granting motion to transfer and observing that the tribe's "choice of forum is entitled to limited deference" because it was not the tribe's home forum and had no meaningful ties to the case); *Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries*, No. CV 04-60-RE, 2004 WL 1179333, at *3 (D. Or. May 27, 2004) (granting motion to transfer and finding that tribe's "choice of venue is not entitled to deference"); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24-25 (D.D.C. 2002) (granting motion to transfer and explicitly rejecting tribe's argument that its choice of forum was a "paramount consideration").  SRMT is certainly aware that there is no bar to transferring suits filed by federally-recognized tribes, having been subject to such transfer itself.  *See St. Regis Mohawk Tribe v. New York*, 774 F. Supp. 185, 188-189 (SDNY 1991) (transferring suit filed by SRMT to the Northern District of New York pursuant to 28 U.S.C. § 1404).

Second, Plaintiffs cite *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506 (1940) (Opp. 9), but that case has nothing to do with § 1404 either.  *U.S. Fid. & Guar. Co.* concerns a suit brought by the United States on behalf of the Choctaw and Chickasaw Nations to recover lease royalties from a coal company.  *Id.* at 510-512.  The passage Plaintiffs cite addresses whether, in those particular circumstances, the tribes could be subject to cross-claims brought by the coal company.  But there are no cross claims here.  Moreover, Plaintiffs' quote from the decision removes limiting language that makes clear that the Court is *not* stating an absolute principle that tribes are never subject to cross-claims:

> The sovereignty possessing immunity should not be compelled to defend against cross-actions away from its own territory or in courts, not of its own choice, ***merely because its debtor was unavailable except outside the jurisdiction of the sovereign's consent.***  This reasoning is particularly applicable to Indian Nations with their unusual governmental organization and peculiar problems.

8

*Id.* at 513 (emphasis added).  The emphasized portion—absent from Plaintiffs' quotation—makes clear that the Court's statement is made in the specific context of the dispute presented.  In any event, the case provides no suggestion that where, as here, a tribe has elected to file a patent infringement case in a U.S. district court, it is immune from transfer under § 1404.

Plaintiffs' contention that "the sovereign status of the Tribe" means that "Plaintiffs' venue choice is entitled to the utmost deference" (Opp. 9) is thus unsupported by any case law.  There is no such principle, as demonstrated by the numerous cases in which suits filed by federally recognized tribes—including by SRMT itself—have been transferred from the venues chosen by the tribe.  *See* pp. 7-8, *supra*.  Nor would any valid policy basis support such deference.

## II.   The Convenience of the Parties and Witnesses Favor Transfer.

### A.   Inconvenience to a Single, Unidentified SRMT Witness Does Not Support Maintaining this Case in this District.

Plaintiffs do not identify any reason why the Western District of Washington would be less convenient than this District for SRC, or for any SRC witness.  (*See* Opp. 9-12.)  Plaintiffs only assert, without explanation, that "convenience to [SRMT] should be afforded substantial weight."  (Opp. 12-13.)  Plaintiffs claim that "[o]ne of the Tribe's three Chiefs will likely testify at trial," and contend that travel to the Western District of Washington from Akwesasne, New York, "is far more in inconvenient and expensive" than to this District.  (*Id.*)  But Plaintiffs provide no witness declaration or other factual support for these statements.  Further, Plaintiffs fail to identify the subject matter of this unidentified witnesses' testimony, or explain why that testimony would be necessary at trial.  As Microsoft explained (and Plaintiffs do not dispute), SRMT's sole role in this case appears to be an attempt to avoid *inter partes review* (IPR) proceedings on the asserted patents.  (Br. 4.)  That gambit appears doomed to failure.  In

9

*Ericsson Inc. v. Regents of the Univ. of Minnesota*, IPR Nos. 2017-1186, -1197, -1200, -1213, -1214, -1219 (PTAB Dec. 19, 2017) (attached as Exhibit 16), an expanded panel of the Patent Trial and Appeal Board held that "the filing of an action in federal court alleging infringement effectively waives [a patent owner's] Eleventh Amendment immunity defense," and denied the University of Minnesota's motion to dismiss IPRs filed against patents the University had asserted in district court.  Ex. 16 at 7-12.

Regardless of whether SRMT plays any ongoing role in this case, Akwesasne sits at the U.S.-Canada border in the northernmost part of New York State.  *See* Ex. 17.  Travel from Akwesasne to either district may be time-consuming, but Plaintiffs provide no facts and no law supporting an argument as to why inconvenience to SRMT's single witness should outweigh inconvenience to the larger group of Microsoft witnesses.

### B. Witness Convenience Overwhelmingly Supports Transfer.

All likely Microsoft witnesses (including those identified in the Complaint) who work on developing Catapult technology live and work in the Western District of Washington, the location of Microsoft's headquarters.  (Br. 10-11.)  Given Plaintiffs' failure to argue any inconvenience to any witness beyond a single, unidentified SRMT witness, the witness convenience factor overwhelmingly weighs in favor of transfer.[3]

Plaintiffs' argument that "the location of Microsoft's own employees is irrelevant in analyzing the parties' relative convenience" (Opp. 9) is contrary to law.  *See Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995-96 (E.D. Va. 2011) (presence of defendants' employees in the Northern District of California weighs strongly in favor of transfer to that

---

[3] Plaintiffs do not dispute that the presence of several of the inventors in Colorado weighs in favor of transfer.  (*See* Br. 12)

district); *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 328 (E.D. Va. 2004) (presence in New York of defendant's witnesses "most knowledgeable" about the accused product favors transfer to the Southern District of New York); *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (location of defendant's key employee witnesses in Hawaii "favors Defendant's motion to transfer to the District of Hawaii"); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000) (transferring to the Southern District of California, where defendant's "witnesses, most of whom are party witnesses" were located).

At most, the authority Plaintiffs cite (Opp. 9) only suggests that in some circumstances "courts give less weight to the witness convenience factor when the appearance of witnesses can be secured without the necessity of compulsory process." *Heinz Kettler GMBH & Co v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668-69 (E.D. Va. 2010) (quotation marks omitted). But "less weight" is not "no weight," and the "availability of compulsory process" is a separate and distinct factor from "the convenience of the parties and witnesses." *BHP Int'l Inv., Inc. v. OnLine Exch., Inc.*, 105 F. Supp. 2d 493, 498 (E.D. Va. 2000).

Plaintiffs next urge the Court to ignore likely third-party witnesses from companies located in the Northern District of California. (Opp. 10.) Plaintiffs feign confusion ("Microsoft also fails to explain what facts or claims the testimony of those witness would be relevant to"), and label Microsoft's argument about these witnesses a "bald claim" and "rank speculation." (*Id.*) But Plaintiffs alleged *in their Complaint* that each of these companies is involved in this case. Plaintiffs contend that Altera/Intel supply hardware accused of infringement (*See* Compl. ¶¶ 91 (Altera), 92-93 (Intel)), and allege that Microsoft induces infringement where Yahoo! and Apple are the direct infringers (*id.* at ¶¶ 151-53). Plaintiffs cannot have it both ways. Either

(1) all four Northern California companies are involved in the alleged infringement, confirming that witnesses from those companies are relevant to this case; or (2) Plaintiffs' statements are baseless and should be stricken from the Complaint.

As to Plaintiffs' argument as to which third-party witnesses may ultimately be called as a witness at trial (Opp. 10), at this stage—without any meaningful, binding infringement contentions from Plaintiffs—Microsoft cannot evaluate how critical trial testimony from these third parties may be. Microsoft can only take Plaintiffs at their word that these companies are somehow involved in the alleged infringement.

Plaintiffs then attempt to distinguish *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009) based on its grounding in Fifth Circuit authority (*see* Opp. 10-11), but again misstate the law. Plaintiffs claim that "[t]he Fifth Circuit, as opposed to this District, grants no deference to the plaintiff's choice of forum." (Opp. 11.) That is incorrect. *In re Genentech* repeatedly cites and relies on *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) for its statement of Fifth Circuit law on transfer pursuant to § 1404. *See* 566 F.3d at 1341-42. And *In re Volkswagen* holds that a party seeking transfer must prove that the transferee forum is "clearly more convenient" than the venue chosen by the plaintiff. 545 F.3d at 315 ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."). Plaintiffs' contention that Fifth Circuit law "grants no deference to the plaintiff's choice of forum" is directly contradicted by the only authority it cites. Accordingly, Plaintiffs' contrast of Fifth Circuit law with this District's law (or, oddly, that of the Third Circuit) rests on an erroneous premise.[4]

---

[4] As Microsoft noted in its brief (Br. 4) this District has also cited the same Fifth Circuit authority in addressing motions to transfer. *See Yancey v. Int'l Fid. Ins. Co.*, No. 1:16-cv-0057, 2016 WL 2997375, at *8 (E.D. Va. May 25, 2016), citing *In re Volkswagen*, 545 F.3d at 318.

Plaintiffs also suggest that *Genentech*'s treatment of "the convenience of the witnesses" as "probably the single most important factor in transfer analysis" is inapplicable in this District. (*See* Opp. 11-12.)  Again, Plaintiffs are incorrect.  *Genentech*'s statement is entirely consistent with this District's treatment of party witness convenience, in authority Plaintiffs ignore.  *See Bd. of Trs. v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988) ("Witness convenience is often dispositive in transfer decisions.").  *See also Pragmatus*, 769 F. Supp. 2d at 995-96 (presence of party witnesses in destination district weighs strongly in favor of transfer); *Agilent Techs.*, 316 F. Supp. 2d at 328 (same); *Acterna*, 129 F. Supp. 2d at 939 (same); *Cognitronics*, 83 F. Supp. 2d at 696 (same).  And contrary to Plaintiffs' claim, Microsoft has provided the information necessary for the Court to "assess the relevance and materiality of the information the witness[es] may provide."  (Opp. 12.)  Microsoft's employee declarations confirm that most of the Microsoft employees *Plaintiffs identified* in the Complaint have worked for years on the accused technology, throughout the relevant time period, in the Western District of Washington.  *See* Bittner Decl. ¶ 4; Burger Decl. ¶ 4; Caulfield Decl. ¶ 4; Chung Decl. ¶ 4; Eguro Decl. ¶ 4; Fowers Decl. ¶ 4; Heil Decl. ¶ 4; Lee Decl. ¶ 4; Ovtcharov Decl. ¶ 4; Putnam Decl. ¶ 4.  Further, the Court can take Plaintiffs' own word that testimony from third-party witnesses from Altera/Intel, Yahoo!, and Apple may well be relevant and material to this case, as the Complaint insists all four companies are involved in the alleged infringement.  (*See* Compl. ¶¶ 91 (Altera), 92-93 (Intel)), 151-53 (Yahoo! and Apple).)

Having already improperly conflated "witness convenience" with "the availability of compulsory process," Plaintiffs also erroneously conflate "witness convenience" with "convenience of the parties."  Plaintiffs declare that a "multi-billion-dollar global company" like Microsoft "cannot suffer financial inconvenience from a trial" in Virginia.  (Opp. 12.)  Witness

convenience cannot be dismissed by looking at a party's finances. Potential witnesses, including the eleven Microsoft employee witnesses residing in the Western District of Washington that Plaintiffs elected to name in their Complaint, are people. They have families in the Western District of Washington. They have day-to-day work responsibilities. And they have obligations in their communities beyond their employment at Microsoft. Travelling entirely across the country to prepare for and testify at a trial in this case would impose a significant, non-monetary cost. In contrast, a trial in the Western District of Washington, where those witnesses reside, would provide much less disruption to their lives. Plaintiffs' attempt to brush those concerns aside by invoking Microsoft's revenues is both cynical and unsupported by law.[5] *See, e.g.*, *Barela v. Experian Info. Sols., Inc.*, No. 04 C 5144, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005) ("It is [ ] sensible to consider the residence of witnesses employed by parties, and to consider related travel cost and lost-work issues attendant to a distant trial, when trying to make a pragmatic assessment of whether a venue transfer is warranted.").

## III. Judicial Economy and the Interests of Justice Support Transfer.

### A. Judicial Economy Supports Transfer Especially Where Amazon.com Has Consented to Transfer to the Western District of Washington.

Amazon.com filed a notice of joinder to Microsoft's motion and consented to transfer to the Western District of Washington. *See* Dkt. 31 in *SRC Labs, LLC v. Amazon Web Servs., Inc.*, No. 1:17-cv-01227 (E.D. Va. Dec. 19, 2017). Accordingly, judicial economy is best served by

---

[5] The authority Plaintiffs cite (Opp. 12) comes from Delaware, not a court in this Circuit, and also fails to support Plaintiffs' argument. The quotation from *Graphics Props. Holdings, Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 328 (D. Del. 2013) concerns only the "convenience of parties" factor—the court analyzed the "convenience of witnesses" separately. *See id.* at 329. *Cypress Semiconductor Corp. v. Integrated Circuit Sys, Inc.*, No. 01-199-SLR, 2001 WL 1617186 (D. Del. 2001) does not contain any substantive discussion of the convenience of party witnesses; as with the first Delaware case, the quote Plaintiffs provide comes from the court's discussion of the convenience of the parties. *See id.* at *3-4.

transferring both cases.  But even if the Amazon case were not transferred, Plaintiffs' "judicial economy" arguments do not support retaining this case in this District.

First, Plaintiffs ignore *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), which as Microsoft explained (Br. 15) granted a writ of mandamus where the district court assigned "substantial weight" to a co-pending suit in the same district "where the other convenience factors clearly favor" transfer.  609 F.3d at 1382.  Second, Plaintiffs greatly overstate any risk that that a co-pending case against Amazon presents a "risk of inconsistent judgments."  (Opp. 13-14.)  Plaintiffs accuse Amazon of infringement for using Amazon's own technology, not for using the Microsoft technology accused in this case.  Accordingly, there is little risk of "inconsistent judgments" on infringement.[6]  And if one court were to find, in light of the evidence presented either by Microsoft or Amazon, that Plaintiffs' asserted patents are invalid, no inconsistency would arise—the invalidity determination would bind Plaintiffs by collateral estoppel, where a finding of no invalidity in either case would have no effect on the other.

Second, the federal statutory civil procedural scheme addresses any potentially valid concern in this regard.  Specifically, multi-district litigation (MDL) is designed to address any concerns of judicial economy in circumstances where suits with potential factual overlap are pending in different jurisdictions.  *See* 28 U.S.C. § 1407.  To the extent there are issues common to this case and the Amazon case, MDL allows those issues to be resolved in a single forum, with trials occurring in the venues where the witnesses are located.  Any party concerned about

---

[6] Plaintiffs' reliance on *In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) is misplaced.  In *Vistaprint*, the co-pending litigation involved "the same patent *and underlying technology*," and the district court judge "became very familiar with the only asserted patent and the related technology during a prior litigation."  *Id.* (emphasis added).  Neither circumstance is present here.

overlap or potential inconsistency can advance those arguments to the Judicial Panel on Multi-District Litigation.  MDL is the appropriate mechanism for addressing any judicial economy concerns Plaintiffs raise.  Maintaining this case for trial in a clearly inconvenient venue is not.

Third, as Microsoft explained, issues of court congestion have little impact, where this District has seen a significant recent rise in its caseload, and where the Western District of Washington has a slightly longer (5 month) median time to trial.  (*See* Br. 15.)  Plaintiffs' argument (citing information apparently found somewhere on ballotpedia.org) that the Western District has two more judicial vacancies than this District does (Opp. 14) does not shift this balance.  If anything, filling even one of those vacancies would drastically drop the per-judge workload Plaintiffs calculate.  Plaintiffs' per-judge calculation also ignores the Western District's ten senior judges.[7]

### B.    The Interests of Justice Support Transferring this Dispute.

As Microsoft explained, the central controversy set forth in the Complaint appears to be whether technology developed through Microsoft's Catapult project infringes SRC's patents, including allegations that Microsoft "blatantly and intentionally copied" SRC's technology and implemented it in Catapult.  (Br. 13-14.)  That is a dispute entirely centered in the Western District of Washington, where the Microsoft employees named by Plaintiffs live and work on the accused technology.  (*Id.*).  Plaintiffs provide no response in their opposition.

Plaintiffs do not dispute that the vast majority of the Microsoft witnesses they identified as likely knowledgeable about Catapult live and work in the Western District of Washington. Plaintiffs do not deny that they repeatedly contacted Microsoft in that district, including in two in-person meetings.  Plaintiffs thereby concede that this case presents a local controversy

---

[7] *See* http://www.wawd.uscourts.gov/judges

appropriately resolved in the Western District of Washington.  *See Yancey v. Int'l Fid. Ins. Co.*, No. 1:16-cv-0057, 2016 WL 2997375, at *8 (E.D. Va. May 25, 2016) ("The interest in having localized controversies resolved at home weighs heavily in favor of transfer in this case.").

## CONCLUSION

For the foregoing reasons and those stated in Microsoft's opening brief, the Court should transfer this case to the Western District of Washington.


Dated:  December 21, 2017                    Respectfully submitted,

                                             */s/ Scott M. Border*

                                             Scott M. Border (VSB# 74697)
                                             sborder@sidley.com
                                             SIDLEY AUSTIN LLP
                                             1501 K Street, N.W.
                                             Washington, D.C. 20005
                                             Tel: (202) 736-8000
                                             Fax: (202) 736-8711

                                             Of Counsel:
                                             Richard A. Cederoth
                                             rcederoth@sidley.com
                                             Nathaniel C. Love
                                             nlove@sidley.com
                                             SIDLEY AUSTIN LLP
                                             One South Dearborn
                                             Chicago, Illinois 60603
                                             Tel: (312) 853-7000
                                             Fax: (312) 853-7036

                                             **ATTORNEYS FOR DEFENDANT
                                             MICROSOFT CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of December, 2017, I electronically filed the

foregoing document with the Clerk of Court using this Court's CM/ECF system, which will send

notification of such filing (NEF) to the following counsel of record:

L. Lee Byrd
lbyrd@sandsanderson.com
SANDS ANDERSON PC
111 East Main Street
Richmond, Virginia 23218-1998

Madelaine A. Kramer
mkramer@sandsanderson.com
SANDS ANDERSON PC
1497 Chain Bridge Road, Suite 202
Mclean, Virginia 22101

Alfonso Chan
achan@shorechan.com
Andrew Howard
ahoward@shorechan.com
Christopher Evans
cevans@shorechan.com
Michael Shore
mshore@shorechan.com
SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, Texas 75202

*Attorneys for Plaintiffs*

/s/ *Scott M. Border*
Scott M. Border (VSB# 74697)
sborder@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711